IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEE PRESTON LUNDY,** *Plaintiff,* v. **CITY OF PHILADELPHIA, et al.,** *Defendants.* | **CIVIL ACTION** **NO. 2:23-cv-807-MMB** |

MEMORANDUM OF DECISION

**BAYLSON, J.**                                                                                                                                                                                         **JUNE 23, 2023**

### I.    INTRODUCTION

This case involves claims brought under 42 U.S.C. § 1983 related to the arrest of Plaintiff, Lee Preston Lundy. Plaintiff claims that his constitutional rights were infringed when he was arrested, imprisoned, and prosecuted for failure to comply with Pennsylvania's sex offender registration requirements. Plaintiff was convicted in Philadelphia Municipal Court of an offense that would have required him to register as a sex offender. Plaintiff appealed this conviction to the Philadelphia Court of Common Pleas. Plaintiff alleges that he was then arrested for failing to register after he had filed his appeal. Plaintiff argues that his pending appeal had the effect of vacating the conviction, obviating his need to register under Pennsylvania law.

Plaintiff argues that his arrest for allegedly failing to comply with sex offender registration laws violated his constitutional rights, and he enumerates the following claims for relief, all under a theory of 42 U.S.C. § 1983 enforceability:

(1) For false arrest,

(2) For false imprisonment,

1

(3) For malicious prosecution by his arresting office, Police Officer Robert Bonds, Jr.,

(4) For liability under the rule articulated in Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658 (1978), against both the City of Philadelphia and Police Commissioner Danielle M. Outlaw, for failing to provide training that would have prevented this arrest.[1]

Now, Defendant has filed a partial motion to dismiss, challenging the malicious prosecution claim and the Monell liability claims.

For the reasons below, the Court will grant Defendant's motion with prejudice as to claims against Police Commissioner Danielle Outlaw and deny Defendant's motion as to all other claims.

## II.  FACTUAL BACKGROUND

The following facts are taken as true from Plaintiff's complaint.

On October 3, 2019, Lundy, a resident of Philadelphia, was convicted of Indecent Assault (18 Pa.C.S.A. § 3126) in the Philadelphia County Municipal Court. See Commonwealth v. Lee Lundy, MC-51-CR-0024350-2019. Under Pennsylvania law, individuals convicted of a sex offense are required to meet various sex offender registration requirements. 18 Pa.C.S.A. § 4915.1(a). However, immediately following his conviction and sentencing, Lundy filed an appeal with the Philadelphia Court of Common Pleas (Commonwealth v. Lee Lundy, CP-51-CR-0007968-2019). Lundy argues that this appeal had the effect of "vacat[ing] Plaintiff's conviction and judgment of sentence," obviating the sex offender registry requirements. See Plf. Resp. (ECF 9) at 3.

---

[1] Plaintiff also includes a separate claim for punitive damages.

On October 6, 2022, Lundy was arrested by Officer Bonds for failure to comply with the Pennsylvania sex offender registration requirements. Officer Bonds is assigned to the Special Victim's Unit. Lundy alleges that Officer Bonds knew that Lundy did not have a conviction for which he was required to register as a sex offender, or at least failed to take reasonable steps to investigate that fact. Lundy further alleges that, despite knowledge of its falsity, Officer Bonds swore out an affidavit affirming that Lundy had violated Pennsylvania's sex offender registration law. The case resulting from Lundy's arrest was docketed at Commonwealth v. Lundy, MC-51-CR-0017456-2022. Lundy's bail was set at ten percent of $25,000. Lundy was held at Curran-Fromhold Correctional Facility following his arrest. On October 24, 2022, the Philadelphia District Attorney's Office granted Lundy's motion to modify his bail. On October 26, 2022, the Philadelphia District Attorney's Office dismissed the charges against Lundy.

Lundy alleges that Commissioner Outlaw, as policymaker, was in charge of the procedures, policies, and practices for training Officer Bonds. Lundy alleges that Commissioner Outlaw did not intervene or correct Lundy's arrest, and further alleges that there is no evidence that Commissioner Outlaw disciplined Officer Bonds.

### III. PROCEDURAL BACKGROUND

Lundy filed this lawsuit in federal court on March 2, 2023. Defendants filed this Partial Motion to Dismiss on April 10, 2023. Lundy filed his Response on April 21, 2023.

### IV. JURISDICTION

The Court has jurisdiction over this case under 28 U.S.C. § 1331 (federal question jurisdiction).

## V. LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations as true and view the complaint in the light most favorable to the plaintiff. Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011). The court can dismiss only if it does not find "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## VI. DISCUSSION

Under 42 U.S.C. § 1983, an individual may bring a private cause of action for damages for the infringement of their rights under the U.S. Constitution. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any

4

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

### A. <u>Malicious Prosecution</u>

Defendants challenge Lundy's claims that he was maliciously prosecuted by Officer Bond in relation to this arrest.

To prove a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show that; (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. <u>Allen v. N.J. State Police</u>, 974 F.3d 497, 502 (3d Cir. 2020) (quoting <u>Johnson v. Knorr</u>, 477 F.3d 75, 81-82 (3d Cir. 2007)).

Lundy argues that Officer Bonds violated his constitutional rights by knowingly swearing out a false affidavit of probable cause and securing false charges that resulted in his unlawful confinement. A police officer is considered to have initiated a proceeding against a defendant if they "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." <u>White v. Brommer</u>, 747 F. Supp. 2d 447, 458 (E.D. Pa. 2010) (quoting <u>Merrero v. Micewski</u>, 1998 WL 414724, at *6 (E.D. Pa. July 22, 1998)). Defendants argue that there are no factually supported allegations that Officer Bonds knowingly provided false information or did so with malice. In the alternative, Defendants argue that Lundy's appeal was a matter of public record accessible to the prosecutor, thus preventing a false statement by Officer Bonds from interfering with prosecutorial discretion.

Accepting Plaintiff's factual allegations as true, as the Court is required to do, Lundy states a plausible claim for relief that meets each element of the Third Circuit's malicious prosecution standards. Allen, 974 F.3d at 502. Officer Bonds initiated the prosecution against Lundy by allegedly knowingly providing false information in an affidavit. White, 747 F. Supp. 2d at 458. The criminal matter was resolved in Lundy's favor, with the charges dismissed by the Philadelphia District Attorney's Office. If Officer Bonds intentionally "omitted crucial exculpatory information in [an] affidavit," it could plausibly show that he acted with malice. Harvard v. Cesnalis, 973 F.3d 190, 203 (3d Cir. 2020). Finally, pursuant to Officer Bond's allegedly false affidavit, Lundy was detained at Curran-Fromhold Correctional Facility.

Given that Plaintiff states a plausible claim for relief, Defendant's motion to dismiss the malicious prosecution claim will be denied.

### B. Monell Claims against the City of Philadelphia

When a suit brought under § 1983 names as a defendant a municipality, the suit may not proceed under a theory of *respondeat superior*—that is, where the employer or principal is held liable for the wrongful acts of its employees. Such a case must proceed under the theory of liability prescribed by the U.S. Supreme Court in Monell, which states that "the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." Beck v. Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658 (1978)).

"A municipality is liable under Section 1983 where a plaintiff demonstrates that a municipality itself, through implementing a municipal policy or custom, causes a constitutional violation." Knellinger v. York Street Property Development, LP, 57 F.Supp.3d 462, 471 (E.D.

Pa. 2014) (Dalzell, J.). In terms of what a policy or custom is, "[p]olicy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir.1996) (internal quotations omitted). A plaintiff must "specify what exactly th[e] custom or policy was." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009). A plaintiff must make a connection between the evidence of an illegal policy or custom and the action or inaction by the government as a unit. See Bielevicz v. Dubinon, 914 F.3d 845, 850 (3d Cir. 1990) ("[L]iability may not be proven under the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights.").

Even without a pattern of constitutional violations, a plaintiff can succeed on a failure-to-train claim under Monell if the need for different or more training is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989). To find deliberate indifference from a single-incident violation, the "risk of . . . injury must be a 'highly predictable consequence'" of the municipality's failure to provide training as a part of pre-service training. Thomas v. Cumberland Cnty., 749 F.3d 217, 225 (3d Cir. 2014) (quoting Connick v. Thompson, 563 U.S. 51, 63).

Defendants argue that Lundy failed to identify any specific procedures, policies, or practices for training that resulted in a constitutional harm to Lundy. Defendants state that Lundy's failure to train and failure to supervise allegations are devoid of detail and conclusory. Defendants further state that Lundy merely asserts that because police officers participate in

7

arrests the need for specialized training is obvious. Lundy replies that the lack of adequate training is clear from the facts of his arrest.

Accepting all factual allegations as true, Lundy's arrest itself provides a plausible claim that there were procedures, policies, or practices resulting in a lack of training. Lundy was arrested in this case though he was not subject to Pennsylvania's sex offender reporting requirements. Officer Bonds appears to have failed to identify public record information that would have made clear that arresting Bundy would violate his constitutional rights. Further, Officer Bonds is alleged to be a member of a specialized unit of officers focusing on sex crime related enforcement. Though Lundy does not identify a specific policy or custom, the nature of the failure here plausibly reflects an "obvious" need for "more or different training." City of Canton, 489 U.S. at 390.

Plaintiff states a plausible claim for relief against the City of Philadelphia, and therefore this Court will deny the motion to dismiss on those Monell claims.

### C. Monell Claims against Commissioner Outlaw

Plaintiff also brings a Monell claim against Commissioner Danielle Outlaw in her "individual capacity." Compl. at 1. Just as with his claim against the municipality, Plaintiff alleges that Commissioner Outlaw in her role as "policymaker for the Philadelphia Police Department" established, developed, and maintained policies, practices and customs "exhibiting deliberate indifference to the constitutional rights of citizens" and which Plaintiff alleges proximately caused his injuries. Id. at 12-13. Specifically, Plaintiff alleges that Commissioner Outlaw has "tolerated an atmosphere of lawlessness" and that a failure to fill a "need for specialized training and supervision is so obvious" that Commissioner Outlaw should be

8

considered "the moving force[] in the constitutional and federal violations and injuries complained of by Plaintiff." Id. at 13.

Despite its rhetoric and grandstanding, the Complaint fails to draw any sort of real proximate connection between Commissioner Outlaw and the alleged injuries. Proximate cause is still a necessity for proving a Monell claim. See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr., 372 F.3d 572, 580 (3d Cir. 2004); see also Carmody v. Bd. Of Trustees of Univ. of Illinois, 893 F.3d 397, 401 (7th Cir. 2018) ("Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation."). Additionally, Plaintiff provides no factual basis to believe that Commissioner Outlaw had final authority to establish the bounds of the allegedly deficient training program. "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019). Plaintiff does not even appear to make an attempt at providing allegations that would support a proximal connection between Commissioner Outlaw and the injuries alleged, and for that reason the Court will dismiss the claim against her.

## VII. CONCLUSION

For the reasons stated above, the Court will grant the motion to dismiss as to the Monell claim against Commissioner Outlaw, and will deny the motion as to all other claims.

An accompanying order follows.